USCA1 Opinion

 

 September 26, 1995  UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 94-2062 BERNARDO FIGUEROA, Plaintiff, Appellant, v. GEORGE A. VOSE, ET AL., Defendants, Appellees. ____________________ ERRATA SHEET Opinion of this court issued on September 22, 1995, is amended as follows: On page 3, line 11: replace the words "had worked" with "had not worked". September 22, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2062 BERNARDO FIGUEROA, Plaintiff, Appellant, v. GEORGE A. VOSE, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Robert W. Lovegreen, U.S. Magistrate Judge] _____________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Boudin, Circuit Judges. ______________ ____________________ Bernardo Figueroa on brief pro se. _________________ David J. Gentile on Memorandum In Support of Motion for Summary _________________ Disposition for appellees. ____________________ ____________________ Per Curiam. Bernardo Figueroa appeals from the ___________ district court's judgment in favor of various prison officials and medical personnel. In his action under 42 U.S.C. 1983, Figueroa alleged that defendants had violated his Eighth Amendment rights by denying him proper medical care for certain eye ailments. Because the record amply supports the district court's judgment, we affirm, essentially for the reasons given in the district court's decision. See Figueroa v. Vose, 874 F. Supp. 500 (D.R.I. ___ ________ ____ 1994). We add only the following comments about certain arguments made on appeal. First, although Figueroa claims that the court refused to permit two physicians to testify on his behalf, the facts do not support his claim. In scheduling an additional day of trial, the district court ordered the parties to present any remaining testimony at that time. Figueroa told the court that he had no further witnessess. Second, Figueroa claims that the record shows a pattern of missed outside medical appointments which demonstrates defendants' deliberate indifference to his medical needs. The record documents only one occasion on which Figueroa missed an outside medical appointment due to circumstances within the prison's control. In August 1993, prison officials brought him to the Rhode Island Hospital eye clinic on the wrong day. They rescheduled the appointment, however, and the rescheduled appointment was kept. Although a few appointments were missed due to circumstances beyond the prison's control, all such appointments were promptly rescheduled and kept. Figueroa had numerous appointments with outside physicians which were not missed. Accordingly, the magistrate correctly found that defendants' failure to bring Figueroa to certain medical appointments did not show their deliberate indifference to his medical needs. Third, Figueroa argues that the court should not have admitted into evidence a computer printout, which was prepared by the prison payroll department and which allegedly showed that corrections officer Alfred Lancellotti had not worked on April 23 and 24, 1993. The court determined that the printout verified Lancellotti's trial testimony that he had not worked on the days in question. We need not determine whether the court erred in admitting the printout into evidence, or in determining that it supported Lancellotti's trial testimony, since any such error would have been harmless. Figueroa hoped to show that Lancellotti had worked on April 23 and April 24, 1993, in order to establish two other facts that allegedly occurred on those days -- first, that Lancellotti had heard one of the defendants, a nurse, tell him that she did not have a particular medication for him; and, second, that Lancellotti had signed written requests by Figueroa for that medication. -3- Demonstrating either of those facts would not show the defendants' deliberate indifference to Figueroa's medical needs, however. The record indicates that the medication Figueroa sought was Naphcon-A, which an outside specialist had recommended on April 20, 1993. But the record also shows that prison staff doctors had never prescribed that medication for Figueroa in April 1993 and that a prescription by a staff doctor was required before medication recommended by outside physicians could be given to an inmate. Consequently, assuming that the nurse did tell Figueroa that she did not have the medication he sought, she was entirely right, and her statement does not evidence deliberate indifference to Figueroa's medical needs. Likewise, assuming that Figueroa did submit written requests for that medication, the failure to give it to him would not demonstrate defendants' deliberate indifference to his medical needs, absent a showing that the prison unreasonably delayed in having a staff doctor evaluate the appropriateness of the medication and then issuing a prescription. Figueroa made no such showing. Since the facts Figueroa ultimately sought to demonstrate would not have shown defendants' culpability, showing that Lancellotti could have witnessed the nurse's statement or signed Figueroa's requests would not have advanced Figueroa's cause. Hence, the admission of the -4- payroll printout allegedly showing that Lancellotti was absent from work on the days in question and could not have known about the events alleged by Figueroa, and the court's determination that the printout confirmed Lancellotti's testimony that he was absent, could not have been prejudicial.  Finally, Figueroa argues that defendants have never returned him to an outside dermatologist regarding the lesion on his eyelid. The record indicates that there was no need to do so. The last physician to evaluate the lesion recommended seeing a dermatologist again only if the lesion did not heal. In his appellate papers, Figueroa states that the lesion left a scar on his eyelid, indicating that the lesion has healed. Affirmed.  _________ -5-